IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 1:15-CV-350 |
| v. | § | |
| | § | JUDGE RON CLARK |
| GOOGLE, INC., | § | |
| | § | PRD |
| *Defendant.* | § | |

## ORDER RE: GOOGLE'S MOTION TO DISMISS FOR IMPROPER VENUE

This case presents two issues underlying resolution of venue disputes under 28 U.S.C. § 1400(b): (1) placement of the burden of proof; and (2) whether venue facts are analyzed as of the date of filing or as of the date that the cause of action accrued. These issues are not strictly "of first impression," as there are old Circuit Court decisions on point, decided before the creation of the Federal Circuit Court of Appeals. But how these questions are resolved under §1400(b) has never been squarely addressed by the Supreme Court or by the Federal Circuit.

Cases dealing with general venue statutes and concepts, or with transfer of venue for convenience, support placing the burden of proof on Defendant. On the other hand, the Circuit Courts that analyzed § 1400(b) before the creation of the Federal Circuit placed the burden on the plaintiff. The court has considered both lines of precedent in light of the Supreme Court's recent emphasis that § 1400(b) is a "standalone venue statute" that is to be strictly construed as written. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519–21 (2017).

The court concludes that the burden of proof is on Plaintiff and that the venue facts are to be examined as of the date the suit is filed. The evidence presented does not demonstrate that Google had a regular and established place of business in the Eastern District of Texas when the

case was filed, so venue is not proper under § 1400(b).  Google's Motion (Dkt. # 73) should be granted in part.  Applying 28 U.S.C. § 1406(a), the court finds that it is in the interest of justice to transfer the case to a proper venue rather than to dismiss it entirely.

## I.  Procedural Background

On September 15, 2015, Personal Audio, LLC sued Google, Inc., claiming that the Google Play music application infringes United States Patent Nos. 6,199,076 and 7,509,178.  Before filing a responsive pleading, Google filed for a stay pending inter partes review by the PTAB. (Dkt. # 9).  The stay was granted (Dkt. # 17), and remained in place until it was lifted on January 12, 2017 (Dkt. # 31).

Google then, still without having filed a responsive pleading, filed a Rule 12 Motion, which included an argument to dismiss for improper venue under 28 U.S.C. §1400(b). (Dkt. # 32).  Personal Audio amended its Complaint, and Google's Rule 12 Motion was dismissed as moot. (Dkt. # 39).   In March 2017, Google responded to the Amended Complaint with a Motion to Transfer for Convenience pursuant to Section 1404(a) (Dkt. # 41), and a Motion to Dismiss (Dkt. # 42), again including its arguments based on improper venue.  The court denied Google's Motion to Transfer because Google had not demonstrated why the convenience factors mandated a transfer to the Northern District of California.  (Dkt. # 66).

 On May 5, 2017, the court denied Google's Motion to Dismiss, concluding that venue was proper in the Eastern District of Texas, based on the 1990 decision in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990).   (Dkt. # 71, at pp. 3–4).  That case held that "resides" in 28 U.S.C. §1400(b) should be interpreted in light of 28 U.S.C. § 1391, which has a broad definition of where a corporation resides.

Seventeen days after this court's denial of the motion to dismiss, the Supreme Court issued the *TC Heartland* opinion, which abrogated *VE Holding*. *TC Heartland* reaffirmed much older precedent that held that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and is not to be supplemented by § 1391(c)." *TC Heartland*, 137 S. Ct. at 1519 (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229, 77 S. Ct. 787, 792 (1957)). As a result, venue in a patent case is again proper in a district only where (a) a defendant is incorporated, or (b) a defendant has committed acts of infringement and has a "regular and established place of business."

Days after *TC Heartland* issued, Google renewed its Motion to Dismiss for Improper Venue. (Dkt. # 73). The court held a status conference, granted limited discovery regarding venue, and stayed various other deadlines in the case. (Dkt. # 79). After allowing a month for discovery, the court held another telephone conference, and set a briefing schedule, including a deadline for Personal Audio to respond to the Motion. (Dkt. # 87). The parties subsequently moved for various extensions to the briefing schedule, which were granted. (Dkts. ## 91, 92).

On September 27, 2017, Personal Audio responded to Google's Motion. (Dkt. # 94). This was followed by a Reply (Dkt. # 96) and a Sur-reply (Dkt. # 97), which allowed the parties to discuss the impact of *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. Sept. 21, 2017), the Federal Circuit's first decision discussing *TC Heartland*.

## II.    Applicable Law

A defendant may request dismissal where venue is improper in the District where the case is brought. Fed. R. Civ. P. 12(b)(3). The patent venue statute, 28 U.S.C. § 1400(b), is the "sole

and exclusive provision controlling venue in patent infringement actions." *TC Heartland*,

137 S. Ct. at 1519.This statute states:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).  The term "resides" refers only to a defendant's state of incorporation.  *TC Heartland*, 137 S. Ct. at 1519.

The Federal Circuit in *Cray* recently clarified that the inquiry into whether a defendant has a "regular and established place of business" has three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d at 1360 (finding that residence of two sales executives in the district was not sufficient for venue under § 1400(b)). The court explained that "no precise rule has been laid down and each case depends on its own facts."  *Id*. at 1362.

### III.     Analysis

**A.     The burden of proof and the relevant time period to be considered under Section 1400(b) are issues resurrected by TC Heartland.**

*TC Heartland* holds that the proper interpretation of § 1400(b) was set out in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228, 77 S. Ct. 787, 791 (1957).  *See TC Heartland*, 137 S. Ct. at 1516–17.  Neither *TC Heartland* nor the Federal Circuit's more recent opinion in *Cray* provides guidance on two subsidiary issues a court must determine to rule upon a motion to dismiss under § 1400(b):  (1) placement of the burden of proof; and (2) the date or time at which the defendant must have had a regular and established place of business.  There are recent cases discussing the concept of venue in general and the interpretation of other venue provisions. But for twenty-seven years, courts have not had to deal with the proper presentation of, and

opposition to, a motion to dismiss under § 1400(b) standing alone, free of supplementation by § 1391(c).

**B.      Section 1400(b) alone controls patent venue and it is to be strictly construed.**

Google's Motion is based on §1400(b), which limits where Plaintiff is "allowed" to bring a patent infringement action.  *See TC Heartland,* 137 S. Ct. at 1517.  This is not to be confused with the concept of jurisdiction, the power of the court to hear a matter.  Nevertheless, the court must recognize that Congress chose to enact "a standalone venue statute" to limit venue in patent infringement cases against corporations. 137 S. Ct. at 1519.

This was emphasized by the Supreme Court in no uncertain terms in *TC Heartland.* 137 S. Ct at 1518 ("[Congress] 'placed patent infringement cases in a class by themselves, outside the scope of general venue legislation.'") (quoting *Brunette Mach. Works, Ltd v. Kockum Indus.*, 406 U.S. 706, 713, 92 S. Ct. 1936 (1972)).  The *Brunette* opinion states that this enactment was "[o]ver the objections of some legislators, who could not see the reason for treating patent suits differently from any other federal question litigation."  406 U.S. at 713; 92 S. Ct. at 1940.

In *TC Heartland*, the Supreme Court focused narrowly on the legislative history of § 1400(b) and its predecessors, and on its own prior limiting constructions.  This, together with its decision to abrogate twenty-seven years of jurisprudence concerning venue in patent cases, strongly indicates that § 1400(b) is not a broad suggestion about where Plaintiffs may file a patent suit.  It is a statute that is to be narrowly construed as written.

**C.      Section 1400(b) is a patent-specific statute—the law of the Federal Circuit controls.**

Accepting that § 1400(b) is to be narrowly construed, the court must also determine whether to apply Federal Circuit law, or the law of the regional circuit, to the issues of burden of proof and the evidence to be considered.  Section 1400(b) applies on its face only to patent actions.

It is a patent-specific statute that has an essential relationship to matters committed to the Federal Circuit's exclusive control. *See Cray*, 871 F.3d at 1360 ("Section 1400(b) is unique to patent law, and constitutes the exclusive provision controlling venue in patent infringement proceedings. Thus, Federal Circuit law, rather than regional circuit law, governs our analysis of what § 1400(b) requires.") (citing *TC Heartland*, 137 S. Ct. at 1518). "Where there is an essential relationship between [the Federal Circuit's] exclusive statutory mandate or [the Federal Circuit's] functions as an appellate court and the relevant procedural issue, that relationship provides an additional reason why resolution of the procedural issue may be committed to our jurisprudence." *Biodex Corp v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858–59 (Fed. Cir. 1991); *see also Nobelpharma AB v. Implant Innovations,Inc.*, 141 F.3d 1059, 1067 (Fed. Cir. 1998). Federal Circuit law controls.

**D.      The burden of proof is on Personal Audio.**

    *VE Holding* was decided twenty-seven years ago, and the Federal Circuit was created only eight years before that. There is no Federal Court decision assigning the burden of proof in a § 1400(b) matter. However, Circuit Court opinions issued in patent cases before the creation of the Federal Circuit are considered persuasive. *See Abbott Labs v. Cordis Corp.*, 710 F.3d 1318, 1325 (Fed. Cir. 2013) ("While patent law decisions of the regional circuits do not bind us, we may consider them as persuasive authority.") (citations omitted) (citing *Cerveceria Centroamericana, S.A. v. Cerverceria India, Inc.*, 892 F. 2d 1021, 1023 (Fed. Cir. 1989)).

    Accordingly, the court has reviewed cases decided before *VE Holding* for guidance as to the proper placement of the burden of proof when a corporate defendant in a patent infringement action asserts that venue is improper under §1400(b). Although these cases were decided before the Federal Circuit was created, they are persuasive as to how courts, guided by Supreme Court precedent, placed the burden of proof when a § 1400(b) challenge to venue was raised.

In a 1969 Seventh Circuit patent infringement where venue was challenged under § 1400(b), the Court put the burden on Plaintiff to establish proper venue. *Grantham v. Challenge-Cook Bros., Inc.* 410 F. 2d. 1182, 1184 (7th Cir. 1969). The Court emphasized that the patent venue statute "should not be liberally construed in favor of venue." *Id.* (citing *Schnell v. Peter Eckrich & Sons, Inc.* 365 U.S. 260, 264, 81 S. Ct. 557, 560 (1960)). This court has located no compelling authority suggesting that it should ignore the reasoning of *Grantham*. This case, which was decided before 1982, is persuasive. Less than three months ago, it was cited with approval for other reasons by the Federal Circuit in *Cray. See Cray*, 871 F.3d at 1363.

*Grantham* was not an outlier. A 1979 First Circuit opinion reached the same conclusion:

> [T]o show compliance with the requirements of Section 1400(b)[,] plaintiff must establish that defendant has both committed acts of infringement in Massachusetts and has a regular and established place of business [there]. It should be noted that there is ample authority placing the burden of so doing on the plaintiff once a defendant has challenged venue by filing a motion to dismiss based on the lack thereof.

*Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979).

Although the Federal Circuit has not explicitly stated that the burden lies with the plaintiff in a § 1400(b) motion to dismiss for improper venue, that is the logical implication to be drawn from the only case before *Cray* in which the Federal Circuit considered whether a defendant had a "regular and established place of business." *See In re Cordis*, 769 F.2d 733 (Fed. Cir. 1985). In that patent case filed in Minnesota by Medtronic, Inc., Defendant Cordis, a Florida corporation, filed a Rule 12(b)(3) motion to dismiss for improper venue. Cordis asserted that it did not have a regular and established place of business in Minnesota, as required by § 1400(b). The Court did not state explicitly which party had the burden of proof, but appears to have placed the burden on Plaintiff Medtronic when it stated: "Medtronic is relying upon the second test to demonstrate that venue for this action is proper in Minnesota." 769 F.2d at 735.

This court has not found any Circuit Court case holding that in a § 1400(b) motion to dismiss based on improper venue, the burden of proof is on the movant, so long as the motion was timely filed. Based on the Supreme Court's discussion in *TC Heartland* as to the interpretation and effect of § 1400(b), and guided by the earlier decisions on burden of proof in such cases, the court finds that Google properly raised the issue by asserting that Personal Audio had chosen a venue that was not permitted under § 1400(b). The court concludes as a matter of law that the burden to show that venue was proper was then on Personal Audio.

In coming to this conclusion, the court has considered cases with broadly worded statements such as "[v]enue relates to the convenience of litigants." *See, e.g.*, *Panhandle E. Pipe Line Co. v. Fed. Pwr. Comm'n.*, 324 U.S. 635, 639, 65 S. Ct. 821, 823 (1945). This comment was made in regards to a challenge by an amicus to the jurisdiction of the Eighth Circuit Court of Appeals over the subject matter. The Supreme Court held that the challenge was properly a challenge to a venue provision of the Natural Gas Act of 1938, noting that the Act contained a "general grant of authority in § 19(b) to all the courts of appeal . . . ." 324 U.S. at 639, 65 S. Ct. at 824. This court does not find that this is persuasive authority to use when interpreting § 1400(b) in light of the Supreme Court's repeated indications that § 1400(b) is the exclusive statute governing venue in patent cases and is to be narrowly construed.

The court has also examined cases that assign the burden of proof to defendants in venue challenges on the grounds that venue "merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election." *See, e.g.*, *Nierbo Co. v. Bethlehem Shipbuilding Co.* 308 U.S. 165, 168, 60 S. Ct. 153, 154 (1939). The issue in *Nierbo* was whether a corporation, by designating an agent for service in a state, had consented to be sued there, in other words had consented to venue under the general venue

provisions. 308 U.S. at 168, 175, 60 S. Ct. at 154–55, 158.  Neither this quotation, nor the fact that a party may consent to venue or waive the opportunity to object, informs the court as to who has the burden of proof under § 1400(b) or whether § 1400(b) is to be strictly construed.  Here, there is no dispute that Google timely asserted and then reasserted its objection to venue before filing a responsive pleading, in compliance with the procedural requirements. *See* Fed. R. Civ. P. 12.

There are cases that label a 12(b)(3) venue challenge as an affirmative defense, resulting in the conclusion that the movant must plead and prove its contention.  *See, e.g.*, *Myers v. Dental Ass'n.*, 695 F.2d 716, 724 (3rd Cir. 1982) (in the context of an antitrust case, stating that "a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense.").  These cases do not deal with § 1400(b).  As in *Meyers*, these cases assign the burden of proof by labeling venue in general as an affirmative defense, not by analyzing why the burden of proof is properly on a defendant.

A venue challenge is not an affirmative defense listed in, and governed by the law applicable to, Rule 8.  Rather, a challenge for improper venue is listed in Rule 12, which has its own timing requirements.

The list of affirmative defenses in Rule 8 is not inclusive.  But, an "affirmative defense" is defined as an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."  *Black' Law Dictionary* (10th ed. 2014). A 12(b)(3) venue motion says nothing about the merits of the claim nor states that  there is a defense to, or an excuse for, Defendant's alleged action or inaction.  It is simply a statement that "this is not the proper court."

Like a Rule 8 affirmative defense, a venue challenge under Rule 12(b)(3) must be asserted or it is waived.  But, a  Rule 8 affirmative defense may be raised in an amendment, which can even

be allowed at trial. Fed. R. Civ. P. 15. Absent certain exceptional circumstances, a venue challenge in a patent case must be raised by motion before any responsive pleading is filed. Fed. R. Civ. P. 12.

Which party has the burden of proof is frequently dispositive of an issue. *TC Heartland* and *Cray* indicate that § 1400(b) is intended to limit venue and should not be given an expansive reading. Accordingly this court does not find that merely applying the label "affirmative defense" to a Rule 12(b)(3) challenging venue under § 1400(b) is helpful in determining the burden of proof.

Finally, the court has reviewed Personal Audio's strongly asserted argument that there are many statements and holdings that the burden is on the defendant in the patent venue disputes that have been most commonly brought in recent years—motions to transfer under 28 U.S.C. § 1404(a). *See* Opp., Dkt. # 94, at p. 10–12. A motion to transfer venue for convenience under § 1404(a) is governed by the law of the local circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). In a case brought in this court's Circuit, the Fifth Circuit, the movant bears the burden of showing that a proposed venue is clearly more convenient. *See, e.g.*, *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (acknowledging the moving party's burden of demonstrating need to transfer under Fifth Circuit law).

This placement of the burden in § 1404(a) cases makes sense because the movant is seeking to disturb a plaintiff's choice to file in a proper venue in compliance with applicable statutes and rules and to transfer the case to a venue that is merely "more convenient." A § 1400(b) motion to dismiss asserts that a plaintiff ignored the law and filed a suit in a venue where suit was not permitted at all. The court has not found authority for the proposition that justice, public policy, general venue law, or the language of § 1400(b) mandate that the same burden of proof applies to both statutes.

Personal Audio also points to a number of unreported district court decisions denying § 1400(b) motions to dismiss that issued after *TC Heartland*. *See* Dkt. # 94, at p. 11; Dkt. # 97, at pp. 5–6. Some of these turned on whether a defendant had timely filed its motion. Most of those cases were issued before the court in question had the benefit of the Federal Circuit's analysis in *Cray* and its even more recent opinion in *In re Micron Technology, Inc.*, Case No. 2017-138, 2017 WL 5474215 (Fed. Cir. Nov. 15, 2017). In some of these cases, the court rejected the defendant's argument that the plaintiff did not plead venue facts, something that might be wise but is not required by the Rules of Procedure. *See* Fed. R. Civ. P. 8–10.

In the end, the court returns to *TC Heartland's* emphatically narrow interpretation of § 1400(b). The consistent assignment of burden of proof to the plaintiff in § 1400(b) cases decided by Circuit and district courts before the creation of the Federal Circuit and before the Federal Circuit's opinion in *VE Holding* carries greater weight than broad pronouncements on general venue concepts or other venue statutes. The court concludes that the burden of proof is on Plaintiff in this case.

**E.      Venue in a patent infringement case is analyzed as of the date suit is filed.**

The parties dispute whether venue should be analyzed based on facts and circumstances that exist at the time that the underlying cause of action accrued, or based on facts and circumstances that exist at the time that suit is filed. This is another close question.

The language of § 1400(b) limits the date the suit is "brought" to a date the defendant "resides" or "has a regular and established place of business" in the district.

> Any civil action for patent infringement may **be brought** in the judicial district where the defendant **resides**, or where the defendant has committed acts of infringement and **has** a regular and established place of business.

28 U.S.C. § 1400(b) (emphasis added)

. "Bringing" a civil action refers to the act of filing a complaint. The term "resides" is in the present tense. The phrase "the defendant has committed acts" applies to past acts. But the phrase "where the defendant has a regular and established place of business" is in the present tense. Congress could have used "has had a regular and established place of business" but chose not to do so. Likewise, Congress did not tie venue to any jurisdiction in which a cause of action had accrued.

Applying strict statutory construction, venue under § 1400(b) should be analyzed based on the facts and circumstance that exist on the date suit is filed. *See Cray*, 871 F.3d at 1362 ("stress[ing] that the [venue] analysis must be closely tied to the language of the statute."). In this case, that date is September 15, 2015.

Personal Audio suggests that the issue should be analyzed from the time that the cause of action accrues, in this case at the time of the first act of alleged infringement, as long as suit is filed within a reasonable time afterwards. Opp., Dkt. # 94, at pp. 21–27. This is referred to as "the accrual standard." Personal Audio relies primarily on two cases. One is *Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896 (E.D. Tex. June 29, 2017). *Raytheon* was vacated by *In re Cray*.

The second case that Personal Audio relies on is *Welch Scientific Co. v. Human Engineering Institute, Inc.*, 416 F.2d 32, 35 (7th Cir. 1969). In that case, it had been sufficiently alleged for venue purposes that the defendant had committed acts of infringement in the Northern District of Illinois but had sold its business thirty-seven days before suit was filed. *Id.* The Court concluded that venue under § 1400(b) is proper as long as the defendant had a regular and established place of business at the time the cause of action accrued (the alleged infringement occurred) and suit was filed a reasonable time thereafter. *Id.* at 35. The Court held that employing

that test under the circumstances was fair and reasonable and that a 37-day delay between the sale or abandonment of a business and the filing of suit did not support a venue challenge.

The Court deciding *Welch Scientific* considered the Supreme Court's holding in *Fourco Glass* "that Congress had created specific patent venue statute and that it should not be expanded by looking to section 1391(c)." *Id.* The Court opined that it was not expanding patent venue jurisdiction but merely holding "that a defendant cannot establish a business in a particular judicial district and then abandon or sell it without remaining amenable to suit for venue purposes in that district for a reasonable time." *Id.* at 36.

From the point of view of a court in equity, this interpretation seems reasonable and fair; the defendant had a regular and established place of business in the district until only thirty-seven days before suit. Whether it is a correct view of statutory construction to hold that there is some equitable leeway in § 1400(b) will have to be decided by a higher court.

This court concludes that venue is determined under § 1400(b) by the facts and situation as of the date suit is filed. This is the plain reading of § 1400(b), the pertinent provisions of which are written in the present tense. The conclusion is supported by a consistent chain of strict interpretations of § 1400(b) and its predecessor statutes by the Supreme Court, beginning with *Stonite Products Co. v. Melvin Lloyd Co*, 315 U.S. 561, 563, 62 S. Ct. 780 (1942) and culminating in *TC Heartland. See also Cray*, 871 F.3d at 1359 ("[W]e must focus on the *full* and *unchanged* language of the statute, as *Cordis* did not consider itself obliged to do.") (emphasis added).

Personal Audio argues that *Cray* actually supports its position because the opinion referenced one employee who worked in the district prior to filing suit. Opp., Dkt. # 94, at p. 22. This distorts the importance of that one employee, Mr. Testa, to the Court's analysis. The Court stated that the "primary dispute concerns whether Mr. Harless's home, located in the Eastern

District of Texas, constitute[d] a regular and established place of business." 871 F.3d at 1364. Mr. Harless was an employee at the time the suit was filed. The court focuses on Mr. Harless, rather than Mr. Testa, throughout the analysis. In one of the few portions of the analysis that discusses Mr. Testa, the court denies that he helps establish a "regular and established place of business" and adds that this is true "to the extent he is relevant to this analysis." *Id*. The phrase "to the extent he is relevant" does not imply that the court found that Mr. Testa was actually relevant. The *Cray* decision does not preclude the conclusion that the filing date is the pivotal time for venue.

September 15, 2015, the date the suit was filed, is the relevant date for the venue analysis. Events occurring prior to the filing of suit are irrelevant except to the extent they could logically help prove a continuous presence up to September 15, 2015.

**F.  Venue in the Eastern District of Texas is improper.**

  **1.  Google is not incorporated in the Eastern District of Texas.**

  Google is incorporated in Delaware, which is not in the Eastern District of Texas. *See* Am. Compl. ¶ 6. The first prong of § 1400(b) cannot be satisfied.

  **2.  Personal Audio has not shown that Google had a regular and established place of business in the Eastern District of Texas at the time that suit was filed.**

  **a.  Google's lease of office space in Frisco, Texas, in 2012 and 2013 does not establish that Google had a "regular and established place of business" at the time that suit was filed.**

  Both parties dedicated substantial portions of their briefs to discussing an office space in Frisco, Texas, allegedly belonging to Google ("the Frisco Office"). The potentially relevant facts about the Frisco Office, taken from Personal Audio's Motion and its attachments, are as follows:

- **October 27, 2011**: Google entered into a lease for an office space at 6175 W. Main St., Frisco, TX 75034. (Dkt. # 94-7 (Lease), at p. 1).

  - The lease was for a term of 68 months. (Dkt. # 94-7, at p. 6).

  - The lease included a right to extend the lease by an additional 6 years. (Dkt. # 94-7, at p. 50).

  - Google undertook measures to make the leased space an office space. (Dkt. # 94-8, Dkt. # 94-9).

- **November 15, 2011**: Delivery Date under the Lease. (Dkt. # 94-7, at p. 9)

- **March 1, 2012**: Scheduled Commencement date in the Lease (Dkt. # 94-7, at p. 6)

- **April 2012:** Google's reported opening date

- **April 2012 through November 3013**: 15 employees and 16 nonemployees at the Frisco Office. (Dkt. # 94-4 (King Depo.), at 31:1-8)

- **November 8, 2013:** pursuant to Google's Interrogatory responses, the last day that Google employees worked out of the Frisco Office. (Dkt. # 94-18 (Supp. Interrog.), at p. 3)

- **December 2013**: Google closes the Frisco Office. Google states that "facility move-out was completed on December 20, 2013." (Dkt. # 94-18 (Supp. Interrog.), at p. 4).

- **May 9, 2014, through August 31, 2015**: Google subleased space to Quest Management Group (Dkt. # 94-12 (Sublease Agreement), Dkt. # 94-11 (Notice of Termination)).

- **November 17, 2014**: Google provided landlord with notice of termination of lease, effective as of August 31, 2015 (Dkt. # 94-11).

- **August 31, 2015**: termination of the Lease takes effect.

- **September 15, 2015:** Personal Audio files suit against Google.

- **Through 2016**: Google paid taxes to Collin County in relation to personal property located at the 6175 W. Main St. property. (Dkt. # 94-13 (Collin County Tax Record)).

Based on a plain reading of § 1400(b), the filing date of this suit, September 15, 2015, is the date on which Google had to be shown to have a "regular and established place of business." It is uncontested that Google leased the office space in Frisco in November 2011. It is also uncontested that Google closed the office and that there were no Google employees located there as of December 2013. Personal Audio has presented no evidence that Google held it out as a place of regular business past December 2013. Finally, it is uncontested that Google canceled the lease on the office space in Frisco on August 31, 2015.

There is a Collin County tax document showing that Google potentially paid personal property taxes on items located at the 6175 W. Main St. property in 2015 and 2016. (Dkt. # 94-13). That document lists Google, with an address in Mountain View, California, as an "owner." But the document is not a tax record for the real property located at that address; it is a record regarding personal property taxes on items located at that address. The word "Personal" appears in the header field of the document, and the text fields in the document for acreage, square feet, and year built all indicate "0" or "0.000." (Dkt. # 94-13 at p. 2). Paying taxes on personal property located at an office in Frisco that Google rents to another company does not alone, or in conjunction with other evidence before the court, establish that there was a "regular and established place of business" there under *Cray.*

There is evidence that Google removed its own business from the property and subleased the space between December 2013 and August 2015 to a company called Quest Resource Management. This does not help establish that Google continued to have a "regular and established place of business" at that location after December 2013. Personal Audio has not argued or demonstrated that Quest is or was in any way affiliated with Google. While Quest was

occupying the office space, that space was more likely a regular and established place of business for Quest rather than Google. [1]

The court does not accept Google's weak attempts to parse the kind of business that it operated at the office from November 2011 to December 2013. A large corporation could have many types of businesses and hundreds of divisions and subdivisions around the country. The court is not going to read into § 1400(b) a requirement that defendant's "main" or "central" business is at the location. Neither does the court consider averments that the office was not publicized or open to the public. Nothing in the plain language of § 1400(b) even hints that there is a "secret place of business" exception. Finally, Google's statements in its interrogatory responses that the office "never housed more than 15 employees" is unavailing. Some statutes dealing with employee protection have a small business exception. Nowhere in § 1400(b) or other patent statutes has the court found a "small infringer" exception.

From a preponderance of the evidence presented, the court finds that Google operated the office as a regular and established place of business between November 2011 and December 2013.

The court also finds that there is insufficient evidence for Personal Audio to carry its burden of proving that Google had a "regular and established place of business" in Frisco on September 15, 2015. Alternatively, if § 1400(b) should be analyzed under the *Welch Scientific* accrual analysis, the Court finds that Personal Audio has not carried its burden of proving that the 21

---

[1] Personal Audio provides details about Google's sublease to Quest. What Google paid in rent is compared to what it charged Quest for the sublease between May 2014 and August 2015. (Dkt. # 94-6). These details are relevant to Google's obligations after it ceased operations at the office space. Abandoning operations at a leased site and recovering only a portion of the lease payments in a sublease may indicate Google made an unfortunate decision about the original lease. These facts do not support a finding that Google had a regular and established business at that location while it was subleased.

month delay between the closing of the office in December 2013 and the filing of suit on September 15, 2015, is a "reasonable delay."

      **b.**        **The Google Global Cache servers do not constitute or help demonstrate a "regular and established place of business."**

Personal Audio contends that "a series of electronic data warehousing and distribution servers" referred to as Google Edge Nodes or Google Global Cache (GGC) establish a "regular and established place of business" in this District. (Dkt. # 94, at pp. 27–34). Personal Audio spends several pages describing the system, and the following facts are taken from expert affidavits provided as attachments to Personal Audio's Motion. *See* (Dkt. # 94-1) (Adam Reed Decl.); (Dkt. ## 94-2, 94-3, 94-4) (Brian Davison Decl. and attachments). Neither of those experts are Google employees, nor are they in any way affiliated with Google.

The GGC servers are hosted by local Internet Service Providers such as CableOne or Suddenlink. ISP hosts house GGC servers in at least Tyler, Sherman, Plano, and Texarkana. The GGC servers carry out a useful role in Google's business, in that they appear to more efficiently connect internet service customers, *i.e.*, customers of Suddenlink or CableOne, to Google content. Google evidently values the contribution of the GGC system. Personal Audio attached to its Motion Google marketing materials that discuss the GGC network. *See, e.g.*, (Dkt. ## 94-5; 94-22 (website pulls)).

Personal Audio contends that the GGC servers satisfy the *Cray* requirement of a "physical place" because the servers are hosted in a "server room," where the various ISPs are located. Opp., Dkt. # 94, at p. 32. On the other hand, Google states that it "does not even know where the third party ISPs ultimately install the GGC servers because the third party ISPs, not Google, determine their locations." Reply, Dkt. # 96, at p. 11 (quoting Dkt. # 96-3 (Clark Depo), at 66:19-67:2).

The *Cray* court made clear that the statute requires

> **a place**, *i.e.*, a building or part of a building set apart for any purpose or quarters of any **kind from which business is conducted**. The statute thus cannot be read to refer merely to a virtual space or to electronic communications from one person to another.

871 F.3d at 1362 (citing William Dwight Whitney, The Century Dictionary, 732 (Benjamin E. Smith, ed. 1911)) (emphasis added). Servers are "hardware," the physical electronic equipment used to operate the internet or an intranet. Perhaps when discussing the internet, or in the context of virtual reality or virtual space, servers might be loosely referred to as a "place," or perhaps as the "location" of "the cloud." They are not a building or physical quarters of any kind. Even the server rooms, if any, are not Google property. The GGC servers are not "places" under the meaning of the statute and therefore cannot establish a regular and established place of business in this district.

Personal Audio contends that the business of Google is carried out from the servers. But the GGC servers are hosted by separate third-party ISPs. The property on which they are located is not owned, leased, or controlled by Google. The "server rooms" are not rooms from which the business of Google is conducted. It might be true that part of Google's business relies on these servers, but that does not amount to Google's business being carried out from them. To conclude that Google's business was being carried out by these servers would have far-reaching consequences that distort the scope of the statute; for example, every single AT&T tower would then possibly become a place of business for AT&T. Maybe even every handheld device sold by Verizon would become a place of business for Verizon because the end-user signed an agreement with Verizon regarding Verizon's exclusive control of the device.

The court is also not persuaded that Google exercised sufficient control, if any, over those severs at the time of filing suit, meaning that they could not satisfy the third requirement of *Cray*,

that the place be "of the defendant." Personal Audio contends that because the GGC Agreements (Dkt. # 94-11) give "exclusive control" to Google and because the servers "facilitate the business of Google, there is no question that GGC servers are a place of" Google. (Dkt. # 94, at p. 33). Personal Audio also cites testimony from Google's 30(b)(6) representative stating that:

> Usually ISPs will host [the servers] somewhere within *their* network environment, colocation space, sometimes an exchange depending on their architecture . . . . A colocation is a generic industry term for any space that is set up to hold computing infrastructure. And so most ISPs, network operators, small companies, big companies, will have—think of it as a server room.

Dkt. # 94-10, at p. 32 (citing Dkt. # 94-10 (depo) at 36:3-6, 36:22–37:1) (emphasis added).

The servers are not places of Google. The testimony cited acknowledges that the servers are part of the third party ISP's network environment, not Google's. Personal Audio's repetitious quoting of the Google testimony that states that "GGC is considered part of our network infrastructure in its larger sense" misconstrues the reality of Google's structure and ignores the distance between the GGC servers and Google as an entity.

Because the GGC servers do not fulfill at least two requirements of *Cray*, the servers do not constitute regular and established places of business. The court need not consider the third requirement of whether any business conducted at those servers is "regular and established."

### c. Google's remote home offices do not constitute or help demonstrate a "regular and established place of business."

Personal Audio contends that "Google has numerous employees who live and work in the Eastern District of Texas" and from that, argues that these individuals help demonstrate a "regular and established place of business" for Google in this district. Dkt. # 94, at pp. 34–36. Google's argument about individual Google employees does not pass muster under the requirements set out by the Federal Circuit in *Cray*.

The *Cray* court made clear that the place of business

> must be a place of the defendant, not solely a place of the defendant's employee. Employees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own. Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place.

571 F.3d at 1363. Also relevant was "whether the defendant conditioned employment on the employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place." *Id*. In the end, "[t]he fact that Cray allowed its employees to work from the Eastern District of Texas [was] insufficient." *Id*. at 1365. As one court applying *Cray* concluded, that decision "leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant." *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, *4 (N.D. Ill. Sept. 26, 2017).

In its supplemental interrogatory responses, Google provided two tables of information regarding six Google employees working in this District. (Dkt. # 94-18, at pp. 6-7, 9). But Personal Audio did not show that any of these Google employees were working in the district as of September 15, 2015, which is the relevant date. There is evidence to the contrary; those tables show that at least two of the employees, Employee ID # 124842 and Employee ID # 171126, were no longer employees as of November 2012 and April 2013, respectively. (Dkt. # 94-18 at p. 9).

None of the employees took a tax deduction for using part of a home as an office. (Dkt. # 94-10 (Brian King Depo. Tr.), at 69:4-9). There is no evidence that these employees' employment was conditioned on their holding product inventory, marketing materials, or any other kind of product literature. There is similarly no evidence that Google holds out the employees' homes as

its place of business, through marketing materials or on the website for example. The locations of the homes are not even publicly known.

Personal Audio urges the court to follow the court's reasoning in *In re Cordis*, 769 F.2d 733, 735 (Fed Cir. 1985), in which the court concluded that venue was proper because two of the defendant's sales representatives maintained offices in their homes in the district. (Dkt. # 94, at pp. 34–35). But the *Cray* Court specifically distinguished *Cordis* for the same reasons that *Cordis* is distinguishable here. The two at-home employees in *Cordis* stored company literature, documents, and product inventory at home. *See Cray,* 871 F.3d at 1365 (distinguishing *Cordis* at-home employees from Raytheon's at-home employees). Here, there is no evidence that any of the alleged Google employees stored company literature, documents, or product inventory at any time, let alone as of September 15, 2015. *Cordis* is distinguishable and does not alter this court's conclusion.

Personal Audio did not show that the homes of the Google "employees" are in any way under the control of Google or were ever held out as Google's places of business. The fact that Google may allow its employees to work from the Eastern District of Texas does not establish proper venue in this district. With the burden of proof on Personal Audio, the evidence is insufficient to conclude that the Google employees working in this District demonstrate a "regular and established place of business."

**G.    Transfer to the District of Delaware is in the interest of justice.**

A court may sua sponte transfer a case which was filed in the improper district to a district where venue is proper. 28 U.S.C. § 1406(a). This is neither an addition to, nor an expansion of, §1400(b). Narrowly construed, § 1400(b) limits where a patent infringement action may be filed.

§1406(a) merely instructs the court what action it may take when a suit is filed in an improper district.

> Section 1406 of Title 28 is addressed to a case in which venue has been laid in an improper district. It authorizes either a dismissal on that ground or, if the court finds that the interest of justice would be served by a transfer, then a transfer instead.

28 U.S.C.A. § 1406, Commentary on 1996 Amendment of Section 1406 (West 2006). "The decision whether a transfer or dismissal is in the interest of justice rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Transfer is typically considered more in the interest of justice than dismissal.

Personal Audio did not request a transfer in their response to Google's Motion. Google also does not suggest a transfer for convenience under § 1404(a), or in any other manner request a transfer in the alternative to the dismissal. Neither party has briefed where venue would be proper under current venue law.

While this case has not even had a claim construction hearing, it has already dragged on for years due to inter partes reviews and the time spent in this court on this venue fight, extended in part by the delay caused by Tropical Storm Harvey. The court finds that Personal Audio will, more likely than not, be unfairly prejudiced by having to re-file and relinquish three years of potential damages pursuant to Section 286 of the Patent Act, which limits damages to those incurred during the six years before the date on which suit is filed. A transfer to a known proper venue would not appear to prejudice Personal Audio. It could choose to dismiss and refile elsewhere, or the parties might agree on an alternate venue. The court finds that the interest of justice would be served by transfer.

Section 1400(b) provides that venue is proper where a corporation is incorporated. It is undisputed that Google is incorporated in the District of Delaware. Amended Compl., Dkt. # 38,

¶ 6; Google Inc. SEC 10-K (Feb. 11, 2016), *available at* https://www.sec.gov/edgar.  Venue is therefore proper in the District of Delaware; and the interest of justice is served by transfer to that District rather than a dismissal.

## IV.    Conclusion

Two novel issues in this case arise out of the unusual circumstance of *TC Heartland's* reliance on cases decided on and before 1957 to abrogate universally-followed precedent established in 1990 by the Federal Circuit, a court that was created in 1982.  The resolution of these issues will determine the way parties will present, and district courts will decide,  motions to dismiss under § 1400(b).  The court is faced with conflicting authorities and the lack of any direct precedent after the creation of the Federal Circuit.

This court's assignment of the burden of proof to Plaintiff is based on the wording of § 1400(b), the consistent holdings of the Supreme Court back to *Stonite* in 1942,  the very pointed language of *TC Heartland*, and circuit court decisions issued before the Federal Circuit was created.  It seems clear that § 1400(b) and its predecessor statutes were intended to provide specific limited venues for patent infringement actions.  The Circuit courts that addressed the issue prior to creation of the Federal Circuit placed the burden on Plaintiffs.[2]  *TC Heartland* teaches that the statute has not changed and has not been supplemented.  The court finds this authority and analysis to be more persuasive than broad statements about venue in general and holdings in cases that did not address § 1400(b).

As to the applicable date of review, the pertinent provisions of  § 1400(b) are written in the present tense.   Section 1400(b) venue disputes should be decided based on the facts and

---

[2] For that matter, so did most district courts at that time.  *See, e.g.*, 28 U.S.C.A. § 1400(b), n. 119 (West 2006) (listing cases).

circumstances existing as of the date suit is filed. The court understands the equitable nature of the decision in *Welch Scientific Co. v. Human Engineering Institute, Inc.*, 416 F.2d 32, 35 (7th Cir. 1969) to cure a mere thirty-seven day delay. If it is decided as a matter of justice and equity that in cases of a "reasonable delay," the accrual rule should be applicable to § 1400(b), the court finds that the twenty-one month period between December 2013, when the Frisco office closed, and September 2015, when suit was filed, was not shown to be a reasonable delay.

IT IS THEREFORE ORDERED that Google's Motion to Dismiss (Dkt. # 73) is GRANTED IN PART. Because venue is improper in the Eastern District of Texas, the case shall be transferred to the District of Delaware, pursuant to 28 U.S.C. § 1406(a).

The Clerk is directed to CLOSE this case after transferring it to the District of Delaware.

So **ORDERED** and **SIGNED** this **1**st day of **December, 2017.**

_____
Ron Clark, United States District Judge